IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIRST MERCURY INSURANCE COMPANY, | § § § § § | |
| Plaintiff, | | |
| v. | § § § | No. 3:12-cv-4374-L (BF) |
| ROSENBOOM WELDING & FABRICATION, L.L.C. and ANGEL LOGISTICS, INC., | § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff First Mercury Insurance Company ("FMIC") has filed a motion for summary judgment in this declaratory judgment action involving the interpretation of an exclusion to a commercial general liability insurance policy. For the following reasons, the District Court should deny the motion.

**Background**

Danny Keith Kirtley ("Kirtley") shot and killed Trevor Casey Compton ("Compton") on February 10, 2011. *See* Pl. MSJ App., Ex. B (Compl.) at 4, ¶¶ 18-20. The incident occurred at a warehouse leased by Defendants Rosenboom Welding & Fabrication, L.L.C. and Angel Logistics, Inc. in North Strabane Township, Pennsylvania. *Id.* at 2, ¶ 9. The administratrix of Compton's estate subsequently filed a wrongful death action against Defendants in Pennsylvania state court (the "Underlying Lawsuit"). The complaint in the Underlying Lawsuit alleges that Defendants hired Kirtley and Compton as independent contractors or subcontractors to perform work involving

welding. *Id*. at 2-3, ¶¶ 10-12. Defendants allegedly knew that Kirtley was dangerous, but asked him to come to the warehouse on February 10, 2011. *Id.* at 3, ¶ 14 & 4, ¶ 18. Kirtley fought with another employee and, when the fight was over, pulled out a handgun and shot Compton, who was merely a bystander. *Id*. at 4, ¶¶ 19-20.

At the time of the shooting, Defendants were insured under a commercial general liability insurance policy issued by FMIC, Policy Number FMTX007645 (the "Policy"), which provides coverage for "those sums that the Insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." Pl. MSJ App., Ex. A-2 at 4. The Policy further provides that FMIC has the right and duty to defend its insured against any "suit" seeking damages for "bodily injury." *Id*. However, there is "no duty to defend the Insured against a 'suit' seeking damages for 'bodily injury' . . . to which this Insurance does not apply." *Id.* An "Independent Contractors or Subcontractors Special Conditions" endorsement to the Policy specifically excludes coverage for "bodily injury" to:

> Any "employee," "temporary worker," or "leased worker" of any independent contractor(s) arising out of the operations performed for the Insured by said independent contractor(s) or acts or omissions of the Named Insured in connection with the general supervision of such operations[.]

*Id.* at 48. FMIC filed this action for a declaratory judgment that it has no duty to defend the Underlying Lawsuit or indemnify Defendants for any damages that may be awarded on the basis of this exclusion.

The issue presently before the Court on summary judgment is whether the Underlying Lawsuit seeks damages that fall within the exclusion for bodily injuries to employees of independent contractors such that FMIC has no duty to defend the lawsuit or indemnify Defendants for

Compton's injuries. Pl. MSJ Br. at 4.  Defendants, and the administratrix of Compton's estate who intervened as a defendant, *see* Mem. Op. & Order (Doc. 15), 9/9/13, dispute that the Policy excludes coverage for Compton's injuries.  They specifically deny that Compton was an employee of an independent contractor and that his bodily injuries arose out of an operation performed for Defendants.  The parties have fully briefed the issue, and the summary judgment motion is ripe for determination.

**Legal Standards**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue.  *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).  This may be done by "pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).  By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper.  Cases involving the interpretation of insurance policies are particularly appropriate for summary disposition.  *See Principal Health Care of Louisiana v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994); *SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 677 (N.D. Tex. 1996), *aff'd*, 133 F.3d 373 (5th Cir. 1998).

The disposition of the pending motion requires the court to interpret an exclusion to the Policy. Under Texas law, which provides the rule of decision in this declaratory judgment action brought in federal court under diversity jurisdiction, the insurer has the burden to prove that an exclusion applies. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 553 (5th Cir. 2004); *Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554, 556 (5th Cir. 1993). *See also* TEX. INS. CODE ANN. § 554.002 (Vernon 2009). The burden then shifts to the insured to establish an exception to the exclusion or show that coverage exists under some other policy provision. *See Primrose Operating*, 382 F.3d at 553. The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993).

## Analysis

The Court's primary concern in interpreting the Policy is to determine the intent of the parties. *See Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 569 (5th Cir. 2010) (citing *Don's Bldg. Supply, Inc. v. One Beacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008)). As a general rule, the terms used in an insurance policy are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. McMurray*, 342 F. App'x 956, 958 (5th Cir. 2009) (quoting *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001)). When a term is defined in the policy, that definition controls. *Id.* (citing cases). However, the Court cannot simply consider policy terms in the abstract. Rather, the Court "must consider the policy as a whole and interpret it to fulfill [the] reasonable expectations of the parties in light of the customs and

usages of the industry." *Consumers Cnty. Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 365 (5th Cir. 2002) (quoting *N. Am. Shipbuilding, Inc. v. S. Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 834 (Tex. App.--Houston [1st Dist.] 1996, no writ)).

When a coverage dispute involves the duty to defend, that determination is made solely by reference to the allegations of the latest complaint in the underlying litigation and the terms of the policy. *See Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). The allegations of the underlying complaint must be liberally construed and accepted as true. *Disability Servs.*, 400 F.3d at 263; *see also Gulf Chem. & Metallurgical Corp. v. Assoc. Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). The duty to defend "is not affected by facts ascertained before suit, developed in the process of the litigation, or by the ultimate outcome of the suit." *Gemmy Indus. Corp. v. Alliance Gen. Ins. Co.*, 190 F. Supp. 2d 915, 918 (N.D. Tex.1998), *aff'd*, 200 F.3d 816 (5th Cir. 1999) (Table) (quoting *Am. Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.--Dallas 1990, writ dism'd)); *see also Colony Ins. Co. v. H.R.K., Inc.*, 728 S.W.2d 848, 850 (Tex. App.--Dallas 1987, no writ). The insurer must provide a defense if the complaint contains at least one claim that is facially within the policy's coverage. *Disability Servs.*, 400 F.3d at 263; *Primrose Operating*, 382 F.3d at 552.

Here, FMIC argues that Compton's injuries are excluded from coverage under the "Independent Contractors or Subcontractors Special Conditions" endorsement to the Policy because Compton was a "self-employed independent contractor." Pl. MSJ Br. at 4. That is, Compton was "an employee of an independent contractor (himself)." *Id.* at 6. This argument is fatally flawed because it ignores the allegations set forth in the complaint in the Underlying Lawsuit, which plainly

5

aver that Defendants hired Compton and Kirtley to be "independent contractors and/or subcontractors of [Defendants] and not employees." Pl. MSJ App., Ex. B at 3, ¶ 12. There is simply no allegation that Compton was an employee, of himself or any other independent contractor, and FMIC's attempt to read such a limitation into the complaint is inappropriate.

Nor does FMIC cite any authority for its bald assertion that employees of independent contractors include "self-employed independent contractors." Pl. MSJ Br. at 5, 6. Rather, this argument appears to improperly conflate two distinct categories of workers. Employees and independent contractors differ in a number of important ways. As another court in this district succinctly explained:

> An employer who hires an independent contractor, rather than an employee, to perform a particular task is able to treat the hired individual differently: the employer is not required to pay or deduct FICA, unemployment, or income taxes for the individual; the contractor is not within a wide variety of federal statutes covering labor relations and wages; workers' compensation statutes are inapplicable; and the employer has reduced tort liability for the acts of the hired individual. Similarly the independent contractor's relationship with his employer differs from an employee's. Generally, the contractor is not subject to the orders of the employer with respect to the details of the work and he is free to offer his services to the public.

*Hearn v. Internal Revenue Agents*, 623 F. Supp. 263, 267 (N.D. Tex. 1985). Under Texas law, the test for determining whether an individual is an "independent contractor" or an "employee" requires an assessment of the amount of control the employer exerts or has the right to exert over the progress, details, and methods of operations of the work. *See Mid-Continent Cas. Co. v. Davis*, 683 F.3d 651, 655 (5th Cir. 2012) (citing *Limestone Prod. Distrib. Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002)). An "employee" is generally subject to the direction and control of another person.

*See Julian v. Patel*, No. 06-01-00128-CV, 2002 WL 1300016, at *4 (Tex. App.--Texarkana June 14, 2002) (citing *Northwestern Nat'l Life Ins. Co. v. Black*, 383 S.W.2d 806, 810 (Tex. Civ. App.--Texarkana 1964, writ ref'd n.r.e.)).  An independent contractor, on the other hand, performs work for another person but "us[es] his own means and methods, without submitting himself to their control in respect to all its details." *Id.* (quoting *Pitchfork Land & Cattle Co. v. King*, 162 Tex. 331, 346 S.W.2d 598, 602-03 (1961)).  However, it is axiomatic that an independent contractor is not his own employee.

Finally, the legal authority FMIC relies on to suggest a contrary result is easily distinguishable.  *See* Pl. MSJ Br. at 7, 8.  The policy exclusions at issue in *Preferred Contractors Ins. Co. Risk Retention Group, LLC v. Oyoque Masonry, Inc.* and *Essex Ins. Co. v. Bickford & Sons, L.P.* each provided that the policy would not apply to any claims for bodily injury arising out of claims by independent contractors *and* their employees. *Preferred Contractors*, No. 4:12-CV-1406, 2013 WL 3899332, at *2 (S.D. Tex.  July 26, 2013); *Essex Ins. Co.*, No. H-06-2924, 2007 WL 2903850, at *4 (S.D. Tex. Oct. 2, 2007).  In this case, the Policy exclusion, by its terms, only applies to employees of independent contractors, and not the independent contractors themselves.  Because FMIC has not met its burden to prove the "Independent Contractors or Subcontractors Special Conditions" exclusion applies, the summary judgment motion should be denied.

## RECOMMENDATION

The District Court should DENY FMIC's summary judgment motion (Doc. 18).

SO RECOMMENDED, June 19, 2014.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).